The opinion of the court was delivered by
Hornblower, C. J.
The first question arises on the construction of the will of Daniel Applegate. If the lessor of the plaintiff derived title under that will, the motion for a new trial must be refused. If he did not the verdict must be set aside and a new trial granted; and in that event it will be time enough to discuss the grave questions of capacity and publication arising on the second will, when the question of title under that will shall be brought before us.
We are not to be influenced at all in construing this will, by any change that afterwards took place in the testator’s family, or in his views; nor are we to be turned aside from the question of intent, or the legal operation of this will, by any apprehension of difficulties that may now exist, or hereafter arise, from the fact that the will was never proved by the executors; that they never have, or never will sell under it; or that they are now dead and cannot execute the powers and trusts confided to them; nor by the fact that a subsequent will has been properly or improperly admitted to probate, so long as that will is not now admitted by the plaintiff to be in force. They are matters, that in this court at least, lay entirely aside of the questions to be discusssd on this motion. The only question is, did the lessor of the plaintiff derive any title at law, under and by virtue of this will ?
That the mind and intent of the testator was, to convert the whole of his real estate into money, and to apportion it out among his children, -is too clear I think to require an argument.
In the first place, he gives the whole of his personal property to his wife ; and then gives, her, and his children, different sums of money, amounting in the aggregate, £o four thousand and fifty dollars, to be paid, out of the proceeds of the sale of his real property; all of which in the most direct'terms he orders his execu *247 tors to sell. Every subsequent clause and direction in the will and eodicil, as to the moneys he leaves to his children, show that he contemplated a conversion of his land into money. This is not denied : on the contrary it is admitted that there is no direct devise of the land as such : but it is insisted that the terms, “ the residue of my estate, I give to Reuben, John, Samuel and Jacob, in equal portions, &c.” vested in them the whole of the testator’s real estate, as devisees in fee, subject to be defeated upon a sale of the premises at any time afterwards by the executors.
Whether this is so or not, must depend entirely upon the sense in which the testator used the words, “ residue of my estate.” That they are proper and apt words to pass real estate, must be admitted ; but if manifestly used in a different sense, they must be restrained to so as to effectuate the intention of the testator. That intention must be collected either from the whole will, or from the connection in which they are employed, or from both. This was the course adopted by this court, in Den v. Snitcher et al. 2 Green 53. The words “ all .the remainder of the rents, profits and residue of my estate,” were by construction restricted to the surplus of a particular fund, which the testator had created for the payment of his debts. The case of Doe v. Buckner, 6 T. R. 610, is there cited, and it is applicable to this case, as it was to that. By a reference to 2 Prest, on Est. 89 &c. it will be seen that the words “ all the residue of my estate,” have been frequently limited to a specific fund or to personal property, in exclusion of the real estate. That the testator in this ease used the words “ residue of iny estate ” in this restricted sense, I have no doubt. He had, in contemplation of liis own mind, turned all Ins lands into money. Out of that fund his debts were to be paid; for he had given every thing else to his wife. Out of that fund too, his wife was to have two thousand dollars, and the legacies were to be paid ; there might be, and probably would be a surplus left. It was necessary for him to dispose of that surplus, if there should be one; and he gave it to his four sons, of whom the lessor of the plaintiff is one, under the name of “ the residue of my estate.” That the testator by this expression meant the residue of the money, sifter paying debts and legacies, is most manifest; for he adds, “first reserving out of said residue, one hundred dollars for my son William, to remain in the hands of *248 Tabor Chadwick, and to be paid out, at his discretion.” What would be the meaning of that direction, if the residue spoken of by the testator meant lands, instead of money ? It would be difficult to tell.
We were asked on the argument, how these four sons are ever to get their share of the surplus, since the executors never sold the land, and probably never will, and never can, owing to death or for some other reason. The only answer I can give to that question is by asking another. How is the widow to get her two thousand dollars, and the legatees to get their respective legacies, if the whole real estate now belongs to the four sons exclusively, as devisees, and the executors will not, or are dead and cannot execute the will ? It is no solution of this question, to say that the widow died before the testator, (if the fact is so,) or that the legatees are dead; or have repudiated this will and claim under another. The question is upon the meaning of this will, and it means now just what it. did, when the testator penned it. Its construction cannot be altered by any neglect of duty by executors ; nor by any change in the testator’s family ; nor by any difficulties that may now exist in the fair and full execution of it.
It has been argued that the fee of the land, ought to be considered to be in the four sons, because, in equity, they might have enjoined the executors from selling, upon tendering themselves ready to pay the debts and legacies directed to be paid by the executors out of the proceeds of a sale of the premises. Admitting for the sake of argument, that the four sons might have done so, and overlooking the great rule, that the heir at law, cannot be disinherited, but by express words, or necessary implication ; and supposing, that the four sons had paid off the debts and legacies so as to render a sale unnecessary, whence would they have derived their title to the land ? Certainly not under or by force of the will of the testator j their title would be but an equitable one, established by a decree of a court of Equity, or such a one as a court of equity would always sustain and protect. Besides, it was either a direct devise to them, or it was not. If it was not a direct devise of the land to the four sons, but might be made effectual as a ground of title, by the interference of a court of Chancery, what became of the legal title in the meantime ? That could not lie in abeyance for a moment. Instantly on the death *249 of tlie testator, the legal title was in the heirs at law, or in the devisees. It could not wait for one moment, to give the four sons time to agree among themselves, and to make their election, whether they would let the land be sold and take their share of money, or whether they would disencumber the land, and thus acquire an equitable title to the land itself. And just where the legal title was, the next moment after the testator expired, it is now ; for the four sons have never done anything to entitle themselves equitably to those lands in exclusion of the heirs at law.
In my opinion therefore, the lessor of the plaintiff acquired no title under this will. Upon the death of the testator, the lands descended to his heirs at law, subject to a sale by the executors for the payment of the debts and legacies ; and the lessor of the plaintiff instead of being entitled to one-fourth of the lands as devisee, is only entitled to his share as one of the heirs at law.
The rule therefore ought to be made absolute, with cost to abide the event of'the suit; unless the lessor of the plaintiff will consent to take judgment for an aliquot part, as one of the heirs at law.
Elmer and Whitehead, Justices, did not hear the argument and gave no opinion.